UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KHALED ALI FALLATAH,

        Petitioner,

    v.

WILLIAM BARR, et al.,

        Respondents.

19-CV-1032
DECISION & ORDER

---

Khaled Ali Fallatah is a citizen of Saudi Arabia who has been detained for more than sixteen months during his removal proceedings. On March 31, 2019, Fallatah filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. *See Fallatah v. Barr*, 2019 WL 2569592, at *1 (W.D.N.Y. June 21, 2019). This Court denied that petition on June 20, 2019. *Id.* That order, however, was without prejudice to Fallatah's "filing another petition if his § 1226(a) detention becomes unreasonably prolonged or if, after his order of removal becomes final, his actual removal is no longer reasonably foreseeable." *Id.* at *5.

On July 8, 2019, Fallatah filed a second *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Docket Item 1. Fallatah failed to pay the filing fee, however, and this Court therefore administratively terminated this matter and gave Fallatah thirty days to remedy the deficiency. Docket Item 3. In the meantime, on August 19, 2019, Fallatah moved for an order to show cause requiring the government to respond to his petition. Docket Item 5. On September 4, 2019, Fallatah paid the

filing fee, and on September 9, 2019, this Court issued a scheduling order. Docket Item 7. On October 23, 2019, the government responded to Fallatah's second petition, Docket Items 9 and 10, and on October 30, 2019, Fallatah replied, Docket Item 12. In November and December 2019, Fallatah filed "notes on [the] respondents' opposition" to his petition, Docket Item 13, and a "motion to accept additional exhibits"—specifically, his brief to the Board of Immigration Appeals ("BIA") and a transcript of a hearing on his request for voluntary departure, Docket Item 14.

Because the government has responded to Fallatah's petition, this Court denies Fallatah's motion for an order to show cause as moot. Docket Item 5. The Court grants Fallatah's motion to accept additional exhibits. Docket Item 14. And for the reasons that follow, the Court grants Fallatah's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS"). Fallatah is a native and citizen of Saudi Arabia who came to the United States to attend flight school. Docket Item 9-1 ¶ 5. He therefore was admitted to the United States on October 4, 2017, as a nonimmigrant vocational student. *Id.*

On August 31, 2018, Fallatah attempted to cross the border into Canada to claim refugee status. *Id.* ¶ 6. He was refused entry and, on his return, he encountered DHS officers at the Peace Bridge Port of Entry in Buffalo, New York. *Id.* The next day, he was served with a Notice to Appear charging him with being subject to removal as a nonimmigrant who failed to maintain or comply with the conditions of the nonimmigrant

status under which he was admitted.  *Id.* ¶ 7.  Fallatah was released on his own

recognizance that day.  *Id.* ¶ 8.

On September 6, 2018, Fallatah informed DHS that he intended to enter Canada

by avoiding a Port of Entry and crossing the border near the Indian Reservation located

near Hogansburg, New York.  *Id.* ¶ 9.  He then was taken into custody because of his

stated intent to avoid Canadian immigration officials and violate the terms of the

Alternatives to Detention program under which he was released.  *Id.* ¶ 10.  DHS

decided to detain Fallatah until immigration proceedings were completed, and Fallatah

requested that an immigration judge ("IJ") review the custody determination.  *Id.* ¶ 11.

On October 30, 2018, Fallatah was given a bond hearing, and an IJ declined

bond because Fallatah posed a flight risk.  *Id.* ¶ 12.  A removal hearing was scheduled

for October 30, 2018, but it was adjourned to November 27, 2018, at the request of

Fallatah's attorney.  *Id.* ¶ 13.

At his removal hearing on November 27, 2018, Fallatah requested a voluntary

departure to Turkey, which DHS opposed.  *Id.* ¶ 14.  The IJ adjourned the hearing until

January 7, 2019, to hear argument on Fallatah's voluntary departure application.  *Id.*

On January 7, 2019, Fallatah appeared at the hearing but advised that he intended to

apply for asylum with a request for voluntary departure in the alternative.  *Id.* ¶ 16;

Docket Item 14 at 66.  The IJ therefore adjourned the removal proceedings until April

11, 2019.  Docket Item 9-1 ¶ 16.

On January 25, 2019, Fallatah obtained new counsel who submitted an I-589

Form, which is an Application for Asylum and for Withholding of Removal.  *Id.* ¶ 19.  On

April 5, 2019, Fallatah appeared before an IJ to set a briefing schedule for the I-589

application. *Id.* ¶ 22.  His removal proceedings were adjourned until May 21, 2019, to

accommodate the briefing schedule. *Id.* ¶ 23.

On May 21, 2019, Fallatah's removal hearing was adjourned until June 19, 2019,

"for docket management reasons." *Id.* ¶ 24.  On June 19, 2019, the removal hearing

was again adjourned "for docket management reasons." *Id.*

On July 17, 2019, Fallatah's removal hearing took place, and the IJ reserved

decision. *Id.* ¶ 26.  On August 16, 2019, the IJ denied Fallatah's application for asylum

and ordered him removed. *Id.* ¶ 27.  Fallatah appealed that order to the BIA, and his

appeal is currently pending. *Id.* ¶¶ 28, 34.  He remains detained at the BFDF. *Id.* ¶ 34.

## DISCUSSION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus

whenever a petitioner is 'in custody in violation of the laws or treaties of the United

States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C.

§ 2241(c)(3)).  The government maintains that Fallatah is validly detained under 8

U.S.C. § 1226(a).  Docket Item 3 at 1.  Fallatah makes three arguments to the contrary.

First, he argues that his continued detention violates his right to due process under the

Fifth Amendment.  Docket Item 1 at 15-16.  Second, he argues that his right to due

process entitles him to another bond hearing at which the government must establish by

clear and convincing evidence that he presents a risk of flight or danger. *Id.* at 15.

Finally, he argues that "[t]he government's categorical denial of bail to certain non-

citizens violates the right to bail encompassed by the Eighth Amendment." *Id.* at 16.

Because Fallatah is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## I.   DUE PROCESS

The Fifth Amendment's Due Process Clause forbids depriving any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982). At the same time, however, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (internal citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

The parties agree that Fallatah is detained under 8 U.S.C. § 1226(a). *See* Docket Item 1 at 8; Docket Item 9 at 1. That statute provides that "[t]he Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (quoting § 1226(a)). It requires a bond hearing before an immigration judge to determine whether the alien's detention is necessary while removal proceedings are pending. *See id.* at 837 ("[T]he Attorney General 'may release' an alien detained under § 1226(a) 'on bond . . . or conditional parole.'"). But Fallatah already has had his § 1226(a) bond hearing, and § 1226(a) does *not* require "periodic bond hearings every six months." *Id.* at 847. Furthermore, in light of *Jennings*, § 1226(a) cannot be read to include other significant procedural protections to avoid constitutional concerns. *See id.* at 847-848.

The Due Process Clause is not offended even by mandatory detention of aliens without a hearing for the "*brief period necessary* for . . . removal proceedings." *Demore* 538 U.S. at 513 (2003) (emphasis added). In *Demore*, the Court noted that "in the majority of cases [§ 1226(c) detention] lasts for less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Id.* at 529. Diving even deeper, the Court noted that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days." *Id.* And "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter." *Id.*

## A.    Substantive Due Process

Fallatah first argues that his detention violates his right to substantive due process.  Docket Item 1 at 8.  He has been detained by DHS since September 6, 2018—more than sixteen months.  Nevertheless, this Court cannot say that detention that long necessarily violates due process.  *See Sanusi v. I.N.S.,* 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process).  Indeed, detention under § 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749.  Although there comes a time when the length of an alien's detention pending removal violates due process regardless of the procedural protections afforded, that time has not yet come here.  *See Salerno*, 481 U.S. at 747 n.4.

## B.    Procedural Due Process

Fallatah also challenges the procedural safeguards that apply to his continued detention.  Docket Item 1 at 15-16.  "In light of the substantial uncertainty surrounding the detention provisions" in § 1226, *see Hechavarria*, 891 F.3d at 58, this Court has evaluated procedural due process challenges to immigration detention with a two-step inquiry.  *See Hechavarria v. Sessions*, 2018 WL 5776421, at *5-*9 (W.D.N.Y. Nov. 2, 2018).  As the first step, the Court considers whether the alien's detention has been unreasonably prolonged.  *Id.* at *5-*7.  If it has not been, then there is no procedural due

process violation.[1]  *See Sankara v. Whitaker*, 2019 WL 266462, at \*5 (W.D.N.Y. Jan. 18, 2019).  But if it has been, the Court proceeds to step two and "identif[ies] . . .  the specific dictates of due process" by considering the *Mathews v. Eldridge* factors.  424 U.S. 319, 335 (1976).  *See Hechavarria*, 2018 WL 5776421, at \*7-\*9.  If the government has not provided the procedural safeguards dictated by the *Mathews* factors to an alien subject to unreasonably prolonged detention, then his continued detention violates procedural due process.  *See id.* at \*9.

### 1. Fallatah's Detention

"[C]ourts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.'"  *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)).  Factors bearing on this question include (1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal.  *See Jamal A. v. Whitaker*, 2019 WL 549722, at \*3 (D. Minn. Jan. 22, 2019).

First, and most important, courts consider the length of detention.  See *Reid v. Donelan*, 2019 WL 2959085, at \*9 (D. Mass. July 9, 2019) ("The total length of the detention is the most important factor.").  In its decision on Fallatah's first habeas petition, this Court noted that Fallatah had been in custody for nine months and that "his

---

[1] This presumes, however, that DHS has not "in an arbitrary or categorical manner, . . .  den[ied] an alien access to the administrative processes in place to review continued detention."  *Zadvydas*, 533 U.S. at 724 (Kennedy, J., dissenting).  If DHS denied access to applicable administrative processes arbitrarily or categorically, "habeas jurisdiction would lie to redress the due process violation caused by the denial of the mandated procedures."  *Id.*

next appearance before an IJ [was] only a month away." *Fallatah*, 2019 WL 2569592, at *4. As a result, this Court found that "this factor weigh[ed] only slightly in Fallatah's favor." *Id.*

Now, by contrast, Fallatah has been detained for over sixteen months. Although there is no bright-line rule in determining whether detention has become unreasonably prolonged, *see Hechavarria*, 2018 WL 5776421, at *5-*6, "courts become extremely wary" of concluding that detention is not unreasonably prolonged "[a]s detention continues past a year," *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018); *see also Reid*, 2019 WL 2959085, at *9-*10 (explaining that "detention is likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics," but "[t]his one-year period is not a bright line"). Moreover, Fallatah's appeal is pending before the BIA with no definite timeline for a decision. Thus, this Court finds that this factor now weighs heavily in Fallatah's favor.

Second, courts consider the conditions of detention. "Whether 'the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention' factors into the reasonableness of [a petitioner's] detention." *Jamal A.*, 358 F. Supp. 3d at 860 (quoting *Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (quoting *Muse*, 2018 WL 4466052, at *5).

When this Court considered Fallatah's prior petition, neither party had supplied any information about the conditions that Fallatah faced at the BFDF, so the Court was

unable to address that factor. *See Fallatah*, 2019 WL 2569592, at *4. This time, however, the government submitted the declaration of a DHS employee about the conditions at the BFDF. See Docket Item 9-3. In that declaration, the government avers that the facility is unlike a prison because "*most* persons . . . are not locked in a cell," detainees "*generally* do not face the same level of restrictions typical for someone held at a prison," and detainees "*ordinarily* may move throughout the BFDF without being required to wear handcuffs or legcuffs." *Id.* ¶¶ 7-8, 11 (emphasis added). "Six of the dorm units are open-dorm style," but three others—for detainees with criminal histories or female detainees—have cell doors that close at night. *Id.* ¶ 8. And "persons held at [the facility are] required to wear . . . restraints . . . when being booked in or booked out" or when they are "facing discipline [and are] brought to the Special Housing Unit ('SHU')." *Id.* ¶ 11.

Moreover, detainees are generally allowed to "meet with visitors [only] for an hour." Docket Item 10 at 22. Family members who travel from far distances may be able to spend slightly more time—"two hours in the morning . . . followed by two more hours in the afternoon, and then again in the evening," *id.*—still a significant restriction on visitation.

Because of the cells, restraints, discipline in the SHU, and visitation restrictions, conditions at the BFDF certainly "resemble penal confinement" for at least some persons detained there. *Muse*, 2018 WL 4466052, at *5. Nevertheless, because the record does not contain facts about the particular conditions of Fatallah's confinement, this Court cannot say that this factor weighs in either party's favor.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has indicated that this factor weighs against an immigrant who has "substantially prolonged his stay by abusing the processes provided to him" but not "an immigrant who simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6). Indeed,

> although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Id.*

This Court previously observed that "'[t]he delays that have prolonged' Fallatah's detention 'have largely been due to extensions . . . that he—or his attorney—requested.'" *Fallatah*, 2019 WL 2569592, at *4 (quoting *Manley*, 2018 WL 2155890, at *2)). In the seven months intervening months, however, Fallatah has not caused any further delays. Moreover, the last two adjournments—in May and June 2019— were "for docket management reasons," Docket Item 9-1 ¶ 24, which were presumably not in Fallatah's control.

11

Thus, although Fallatah has caused some of the delay in his removal process, he certainly has not "abus[ed] the processes provided to him." *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436). The cause for the delay therefore does not weigh against him.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal. This Court declines to wade into the merits of Fallatah's claims pending before the BIA, and thus this factor is neutral.

After weighing all the factors, and especially the length of detention, this Court finds that Fallatah's detention has become unreasonably prolonged. Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy, if any, that demands.

### 2. The Process Due to Fallatah

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Fallatah's continued detention without a robust hearing fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *Schall*, 467 U.S. at 263 (quoting *Breed*, 421 U.S. at 531).

Fallatah's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). He obviously has an interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint," *Zadvydas*, 533 U.S. at 690, but his petition provides little information about any ties to the United States demonstrating an interest in being free from detention here as opposed to being free from detention in Saudi Arabia. *See generally Landon*, 459 U.S. at 34 (losing "the right to rejoin [one's] immediate family [is] a right that ranks high among the interests of the individual"). On the other hand, the government does not argue that Fallatah lacks any such ties. See Docket Item 10. Because of Fallatah's *pro se* status, and because "[t]his Court has come to believe that no rational person would subject himself or herself to unreasonably prolonged detention in a jail-like detention facility unless that person's liberty interests in remaining in the United States are quite strong," *Joseph v. Barr*, 2019 WL 3842359, at *8 (W.D.N.Y. Aug. 15, 2019) (quoting *Fremont*, 2019 WL 1471006, at *6 n.7), the Court presumes that Fallatah has a substantial interest in release from detention in the United States.

This Court recognizes that the government's interest in detaining Fallatah also may be strong. The government contends that Fallatah's detention is justified because he presents a flight risk. Docket Item 10 at 4. This Court agrees that such an interest may well be "legitimate and compelling." *Salerno*, 481 U.S. at 752.

Finally, this Court finds that the procedures used thus far create a substantial risk of an erroneous deprivation of Fallatah's liberty interests. As this Court has noted before, "[w]hen the government seeks to detain a person to achieve a regulatory

purpose, due process requires the government to demonstrate by clear and convincing evidence that detention necessarily serves a compelling interest." *Hemans*, 2019 WL 955353, at *8 (citing *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33); *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "'when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)). That standard applies in the context of immigration detention. *See Hechavarria*, 2018 WL 5776421, at *8 (collecting cases).

Therefore, to sustain the prolonged detention of an alien subject to removal proceedings, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person,'" *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the alien will appear for any future proceeding. This requires consideration of less restrictive alternatives to detention. *See Hechavarria v. Whitaker*, 2019 WL 233887, at *10-*11 (W.D.N.Y. Jan. 16, 2019); *Hechavarria v. Sessions*, 2018 WL 5776421, at *9 n.13.

Turning to the procedures used thus far in this case, Fallatah *did* receive an individualized custody hearing before an IJ on October 30, 2018. *See* Docket Item 10 at 4. The IJ declined to release Fallatah because he found that Fallatah was a flight risk. *Id.* But at that § 1226(a) hearing, the burden of proof presumably was on Fallatah to demonstrate to the "satisfaction of the officer that [his] release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

14

Fallatah's first hearing did not provide him the process to which he is now constitutionally entitled because it was not a proceeding in which DHS bore the burden of proof by clear and convincing evidence or where a neutral decisionmaker even considered plausible, less-restrictive alternatives to detention. As this Court has explained, after an alien's detention has become unreasonably prolonged, "a 'typical' § 1226(a) bond hearing[ ]—where *he* must prove '*to the satisfaction of the immigration judge*' that he 'does not present a danger' before the immigration judge could even consider whether conditions of supervision might suffice to protect the public—is no longer constitutionally adequate." *Hechavarria v. Whitaker*, 2019 WL 233887, at *7 (emphasis in original) (quoting 8 C.F.R. § 236.1(c)(8)).

Because Fallatah's detention has been unreasonably prolonged, and because § 1226(a) does not require the government to demonstrate by clear and convincing evidence that his detention necessarily serves a compelling regulatory purpose, the statute is unconstitutional as applied to him. His continued detention violates the Due Process Clause. Fallatah therefore must be released unless, no later than fourteen days from the date of this decision, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Fallatah's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight. The decisionmaker must consider—and must address in any decision—whether there is clear and convincing evidence that no less-restrictive alternative to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, would also reasonably address those purposes. *See Hechavarria v.*

*Whitaker*, 2019 WL 233887, at *10; *Hechavarria v. Sessions*, 2018 WL 5776421, at *8-*9.

## II.    EXCESSIVE BAIL CLAUSE

Fallatah also argues that "[t]he government's categorical denial of bail to certain non-citizens violates the right to bail encompassed by the Eighth Amendment."  Docket Item 1 at 16.  The Excessive Bail Clause requires "that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S. at 754.  Although detention of criminal aliens during removal proceedings for only a brief period without individualized findings after a hearing is not "excessive in relation to the valid interests the government seeks to achieve," *Sankara v. Barr*, 2019 WL 1922069, at *9 (W.D.N.Y. Apr. 30, 2019) (quoting *Galen v. Cty of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007)); *see Demore*, 538 U.S. at 519-21 (explaining Congress's interests in brief mandatory § 1226(c) detention), the same cannot necessarily be said "after unusual delay in deportation hearings," *Carlson v. Landon*, 342 U.S. 524, 546 (1952).  But because this Court has determined that due process requires that Fallatah receive an individualized hearing, his claim that the Excessive Bail Clause requires the same result is moot.  *See Kabba v. Barr*, 2019 WL 3974135, at *7 (W.D.N.Y. Aug. 22, 2019).

## CONCLUSION

For the reasons stated above, Fallatah's motion for an order to show cause, Docket Item 5, is DENIED AS MOOT; his motion to accept additional exhibits, Docket Item 14, is GRANTED; and his petition, Docket Item 1, is GRANTED IN PART AND DENIED IN PART. **Within fourteen days of the date of this decision and order**, the government must release Fallatah from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified. At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Fallatah's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight. Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests. In other words, Fallatah must be released unless a neutral decisionmaker finds by clear and convincing evidence that no condition or combination of conditions of release can reasonably assure Fallatah's appearance and the safety of the community or any persons.

SO ORDERED.

Dated:      January 28, 2020
              Buffalo, New York

                                      *s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE