UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KHALED ALI FALLATAH,

        Petitioner,

   v.                                        19-CV-1032
                                                  DECISION & ORDER
WILLIAM BARR, et al.,

        Respondents.

Khaled Ali Fallatah is a citizen of Saudi Arabia who has been detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, during his removal proceedings. On March 31, 2019, Fallatah filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the BFDF. *See Fallatah v. Barr*, 2019 WL 2569592, at *1 (W.D.N.Y. June 21, 2019). This Court denied that petition on June 20, 2019, without prejudice to Fallatah's "filing another petition if his § 1226(a) detention becomes unreasonably prolonged or if, after his order of removal becomes final, his actual removal is no longer reasonably foreseeable." *Id.* at *5.

On July 8, 2019, Fallatah filed a second *pro se* petition for a writ of habeas corpus. Docket Item 1. On January 28, 2020, the Court granted that petition in part and denied it in part, ordering the government to "release Fallatah from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified." Docket Item 15 at 17. At that hearing, the burden of proof would be on the government to demonstrate "by clear and convincing evidence

that Fallatah's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight." *Id.*

Fallatah had a bond hearing before an immigration judge ("IJ") on February 10, 2020. *See* Docket Item 19-3 at 1. The IJ found that the government had "met its burden of proof of establishing . . . by clear and convincing evidence that [Fallatah] constitutes a risk of flight." Docket Item 19-3 at 37.

On February 12, 2020, Fallatah moved to enforce this Court's January 28 order. Docket Item 16. He claimed that the bond hearing that the government provided did not comport with the Court's instructions. *Id.* On February 21, 2020, counsel entered an appearance on Fallatah's behalf. Docket Item 18. On March 9, 2020, the government responded to Fallatah's motion, Docket Item 19, and on March 16, 2020, Fallatah replied through counsel, Docket Item 20.

For the reasons that follow, the Court denies Fallatah's motion to enforce.[1]

## DISCUSSION

**I.    EXHAUSTION**

Before addressing the merits of Fallatah's argument that his bond hearing did not comport with this Court's order, the Court must address a threshold jurisdictional issue. The respondents argue that this Court cannot consider Fallatah's motion because he has not exhausted his administrative remedies. More specifically, the respondents assert that Fallatah must first obtain a decision from the Board of Immigration Appeals

---

[1] The Court assumes familiarity with the factual background of this case, which is described in its decision and order on Fallatah's petition, *see* Docket Item 15 at 2-4, and will refer only to the facts necessary to explain its decision on this motion.

2

("BIA") on his appeal of the IJ's finding that he is a flight risk before he can seek relief in this Court.  *See* Docket Item 19 at 4-7.

This Court disagrees.  Administrative exhaustion is not required when this Court is deciding only whether the petitioner received the relief that it already ordered.  *See Blandon v. Barr*, ---- F.Supp.3d ----, 2020 WL 465728, at *3 (W.D.N.Y. Jan. 22, 2020).  Moreover, Fallatah argues in his motion that he did not receive a constitutionally adequate bond hearing—an issue that "the BIA does not have jurisdiction to adjudicate."  *See id.* at *4 (quoting *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002)).  And the respondents concede that under the doctrine they assert, requiring exhaustion is merely "prudential."  Docket Item 19 at 4.  Under the circumstances, it would make little sense for this Court to delay deciding Fallatah's motion until the BIA decides his appeal.

## II.   JURISDICTION

The respondents also argue that "[t]he IJ's decision involved discretionary judgments, the review of which is explicitly prohibited from district court review under 8 U.S.C. § 1226(e)."  Docket Item 19 at 11.  This Court agrees that it does not have jurisdiction to review discretionary decisions of an IJ.  But as this Court has previously explained, "a federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, [and] the court has the authority to see that its judgment is fully effectuated."  *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 235 (W.D.N.Y. 2019) (quoting *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010)).  In other words, this Court has jurisdiction to decide the limited question of whether Fallatah's bond hearing complied with its prior order.

### III.    FALLATAH'S BOND HEARING

To begin, "it is important to emphasize that this Court's task is narrow:  it is to determine whether [the respondents] complied with the Decision and Order, not to review the hearing evidence *de novo* and determine whether [Fallatah] is in fact a flight risk."  *Apollinaire v. Barr*, No. 19-CV-6285-FPG, 2019 WL 4023560, at *3 (W.D.N.Y. Aug. 27, 2019).  The question, therefore, "is 'whether the immigration judge relied upon proof that could not possibly establish by clear and convincing evidence' that [Fallatah] is a flight risk."  *Id.* (quoting *Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017)).

Here, the IJ found that Fallatah's attempt in September 2018 to abscond to Canada while on release under the Alternatives to Detention Program "not only demonstrated his total disregard for any implemented conditions of release, but his willingness and ability to effectuate an attempt to evade those conditions of release and seek to join his [wife and children] . . . in Canada."  Docket Item 19-3 at 38-39*; see also id.* at 41 ("This Court finds, employing common sense in [Fallatah's] undisputed factual history, . . . that he has already demonstrated and established that he will do whatever he thinks is best in his personal circumstances to rejoin his family . . . .").  The IJ also noted that Fallatah did "not have familial connections in the United States, particularly of the type who could confer immigration benefits to him."  *Id.* at 39.  More specifically, although Fallatah has a young child who is a United States citizen, "[i]t is undisputed that [the] child . . . is not in a position to confer immigration benefits to [Fallatah]."  *Id.*  And while an individual submitted a notarized letter dated February 5, 2020, stating that he was a "family member" who was "willing to . . .  sponsor" Fallatah, the IJ found that "there is no evidence . . . in this record[ ] to demonstrate any familial connection

4

between . . . the proposed sponsor and [Fallatah]." *Id.* at 40.  Thus, the IJ concluded that there was "no record evidence, or more particularly persuasive record evidence[,] before the Court to demonstrate that [Fallatah] has any family ties in the United States." *Id.*

Based on the IJ's decision, this Court finds that the respondents complied with this Court's order.  Contrary to Fallatah's assertion, the IJ did not "'rel[y] upon proof that *could not possibly establish* by clear and convincing evidence' that [Fallatah] is a flight risk."  *See Apollinaire*, 2019 WL 4023560, at *3 (W.D.N.Y. Aug. 27, 2019) (emphasis added) (quoting *Nguti*, 2017 WL 5891328, at *2).

Indeed, Fallatah's arguments invite this Court to reweigh the evidence, a task outside this Court's limited role.  *See Adejola v. Barr*, No. 19-CV-00241 EAW, 2020 WL 994577, at *6 (W.D.N.Y. Feb. 14, 2020) ("To the extent [the p]etitioner is arguing that the IJ's assessment of that evidence was wrong or that she erred in her credibility determinations or the weight she gave to particular aspects of the record, such arguments are beyond the scope of this Court's jurisdiction.").  For example, Fallatah argues that the IJ erred in relying on Fallatah's noncompliance with the conditions of his supervision in 2018 as evidence of how he would behave now.  *See* Docket Item 20 at 9 ("Here, there was no evidence provided by [the government], nor any evaluated by [the IJ], that showed Mr. Fallatah has since 2018 failed to comply with immigration orders, failed to follow administrative procedures, had any disciplinary issues while at the [BFDF], or would fail to comply with any future immigration or law enforcement orders."). While it is true that the IJ must evaluate "the individual's *current* threat to the community and his risk of flight," *Blandon*, 2020 WL 465728, at *5 (emphasis in original) (quoting

*Hechavarria*, 358 F. Supp. 3d at 240), there is no indication that the IJ failed to do that here.

In fact, because Fallatah's attempt to abscond was less two years ago and he has since been detained and unable to go anywhere, the IJ had good reason to look to Fallatah's past to decide what he might do in the future. Moreover, Fallatah's immediate family—the impetus for his attempt to flee—remains in Canada. Thus, it was reasonable for the IJ to find that Fallatah's actions in 2018 are probative of his likelihood of fleeing now.[2]

Similarly, Fallatah contends that the IJ erred in concluding that Fallatah "does not have familial connections in the United States, particularly of the type who could confer immigration benefits to him." Docket Item 20 at 10 (quoting Docket Item 19-3 at 39). More specifically, Fallatah argues that "this finding was clearly erroneous, as [he] provided a notarized letter of support from his cousin Rivins Fonrose . . . , a family member offering to put up his house as collateral to assist . . . Fallatah in securing his release." *Id.*

But a cousin is not the type of relative who can confer immigration benefits. *See Argueta Anariba v. Shanahan*, No. 16-CV-1928 (KBF), 2017 WL 3172765, at *5 (S.D.N.Y. July 26, 2017) (finding no error in IJ's finding "that even assuming [the

---

[2] So this is not a case in which the IJ relied on a criminal conviction from many years ago despite subsequent evidence of rehabilitation. *Cf. Argueta Anariba v. Shanahan*, No. 16-CV-1928 (KBF), 2017 WL 3172765, at *4 (S.D.N.Y. July 26, 2017) (finding that the IJ did not properly assess current risk of danger where the government "relied almost entirely on its argument [in a 2016 bond hearing] that [the petitioner] was not rehabilitated, but offered no post-2007 evidence of [the] petitioner's alleged lack of rehabilitation and did not address evidence offered by [the] petitioner to show rehabilitation").

p]etitioner had a cousin or even two cousins in the United States, these were not 'family ties of the type who can confer immigration benefits' to [the p]etitioner"). What is more, it was within the IJ's discretion to determine that the letter—standing alone—did not constitute "persuasive record evidence" of family ties. See Docket Item 19-3 at 40. To be sure, the opposite conclusion also could have been reasonably drawn; but again, this Court may not reweigh the evidence.

Accordingly, Fallatah's motion to enforce, Docket Item 16, is denied.

## **ORDER**

For the reasons explained above, Fallatah's motion to enforce, Docket Item 16, is DENIED. The Clerk of Court shall close this case.

SO ORDERED.

Dated:  April 16, 2020
        Buffalo, New York

                                         */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE